UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FERNANDO FRAIZ TRAPOTE, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Case 23-cv-2118-LLA |
| : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, : | |
| : | |
| Defendant. : | |
| : | |

DEFENDANT'S OPPOSITION
TO MOTION FOR SUBSTITUTION OF THE REAL PARTY IN INTEREST

COMES NOW defendant Bolivarian Republic of Venezuela ("Venezuela" or the "Republic"), by counsel, in response to a motion purportedly filed on behalf of the Republic to substitute the real party in interest and substitution of counsel to Mr. David P. Riesenberg, pursuant to Rules 17 and 25 of the Federal Rules of Civil Procedure. *See* ECF No. 29. Because the Court could not grant the relief sought here without addressing non-justiciable political questions, both the political question and act of state doctrines prohibit the substitution that Mr. Riesenberg has requested in his motion.

For the following reasons, the substitution motion should be denied in its entirety.

### I. BACKGROUND

Following fraud and intimidation by then-President of Venezuela Nicolás Maduro during the 2018 Venezuelan presidential election, the Venezuelan National Assembly of 2015 declared its president, Juan Guaidó, as the Interim President of the Republic pursuant to the Venezuelan constitution. On January 23, 2019, President Trump exercised his

constitutional power to recognize the National Assembly of 2015 and its leadership as the only legitimate government of Venezuela, binding all domestic courts to recognize the Interim Government as the sole legitimate government in Venezuela.  *See* Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela (Jan. 23, 2019).[1]  The United States recognizes the democratically elected 2015 National Assembly as the last remaining democratic institution in Venezuela and the functional successor to Mr. Guaidó's interim government.  *See* U.S. State Department, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023).[2]

Against this backdrop, the Republic is defending the present litigation against the plaintiffs.  On September 30, 2024, legal counsel Gregory Paw entered an appearance on behalf of the Republic before this Court.  ECF No. 20.  Mr. Paw and his law firm, Freeh Sporkin & Sullivan LLP, had been retained by the Republic through a process established by the Venezuelan National Assembly of 2015.  The National Assembly made this selection of Mr. Paw as its counsel for this representation through the Asset Administration and Protection Council ("CAPA") , which is the body of the National Assembly of 2015 created and empowered to defend Venezuelan assets abroad and to appoint attorneys.  The powers of the CAPA are provided for in Article 9 of the "Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of

---

[1] Available at:  https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/
[2] Available at:  https://2021-2025.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/

Venezuela," whose latest reform, which governs until 2025, is published in Legislative Gazette No. 82 of December 16, 2024.

On November 1, 2024, counsel for the Republic filed a motion to dismiss the complaint for lack of jurisdiction, ECF No. 22, which has been opposed by the plaintiffs. ECF No. 24.  Briefing is complete on the motion to dismiss.

On June 5, 2025, Mr. Riesenberg filed a notice of appearance purportedly on behalf of the Republic.  ECF No. 28.  The same day, Mr. Risenberg filed a motion to substitute the real party in interest and substitution of counsel.  ECF No. 29.  By Minute Order of June 6, 2025, the Court directed Mr. Paw to file a response to the motion to substitute party and substitute counsel on or before June 13, 2025.

## II.  LEGAL ARGUMENT

While Rule 17 provides a real party in interest with reasonable time to ratify, join or be substituted in an action, Fed. R. Civ. P. 17(a)(3), the Court could not grant the relief sought here without addressing a non-justiciable political question.  Because of the clear recognition by the U.S. President of the Venezuelan National Assembly of 2015 as the only legitimate government of Venezuela, both the political question and act of state doctrines prohibit the substitution that Mr. Riesenberg has requested in his motion.

Support for these doctrines is discussed below.

### A.   Political Question Doctrine Prohibits Courts from Reviewing The Executive Branch's Recognition of a Foreign Government.

Political questions are those that "lie beyond the competence and proper institutional role of the federal courts." *Belgrade v. Sidex Int'l Furniture Corp.*, 2 F. Supp. 2d 407, 415 (S.D.N.Y. 1998)).  Under the political question doctrine, the decision to recognize a

foreign sovereign is exclusively a function of the Executive Branch and presents a non-justiciable political question. *Oetjen v. Central Leather Co.*, 246 U.S. 297, 303 (1918). In fact, "the Executive Branch's decision to recognize a foreign state 'conclusively binds' all domestic courts, such that they must accept that decision." *Jiménez v. Palacios*, 250 A.3d 814, 831 (Del. Ch. 2019) ("Guaidó is the voice of Venezuela's sole effective government as recognized by the U.S. President."). This is so because "[a]s Chief Executive, the President of the United States is the sole organ of the federal government in the field of international relations, and thus holds the exclusive power of recognition of a foreign government." *Id*. at 828. Moreover "a state derecognizes a governmental regime when it recognizes another regime as the legitimate government of that state." *National Petrochemical Co. v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988).

Since the 2019 declaration by President Trump, federal courts have consistently found that the 2015 National Assembly is the only legitimate government of Venezuela. *Jiménez*, 250 A.3d at 826-27 & n.40. In fact, since this formal recognition, "no United States court has held that representatives of the Maduro regime may act for either the Venezuelan government or a Venezuelan state-owned enterprise in litigation." *Id*.

Despite this clear expression here of the Executive Branch's recognition, Mr. Riesenberg states in the motion to substitute that he has been appointed by the Office of the Attorney General ("OAG") in Caracas, Venezuela, to represent that Republic in this matter. ECF No. 29-1 at 2. Mr. Risenberg states that the OAG is the only entity under the Venezuelan Constitution and law that possess "responsibility and competence" to appoint legal counsel on behalf of the Republic. *Id*. While not mentioned directly by Mr. Risenberg, his entry of

appearance is unquestionably on behalf of the now unrecognized and illegitimate Maduro regime.

Mr. Risenberg argues that "relevant U.S. officials within the U.S. Executive Branch" have recognized the "Caracas authorities" to constitute the government of Venezuela since the beginning of the current U.S. and Venezuelan Presidential Administrations in January 2025, based on a "continuous series of productive negotiations between relevant Venezuelan and U.S. officials regarding U.S. foreign-policy objectives." ECF No. 29-1 at 6. He therefore seeks to permit the "OAG in Caracas" to participate in the present case. *Id*.

The Courts have made clear that it is the role of the Executive Branch, not the courts, to identify the legitimate political leadership of a foreign country. "Who is the sovereign, *de jure* or *de facto*, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges…." *Oetjen*, 246 U.S. at 302. Because the Nation "must have a single policy regarding which governments are legitimate in the eyes of the United States and which are not," the President's "power to recognize foreign nations and governments" is exclusive. *See Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) ("[r]ecognition is an act with immediate and powerful significance for international relations, so the President's position must be clear.").

Where competing factions within a foreign government both seek to assert the interests of the foreign state, courts must recognize only that faction which has been recognized by the Executive Branch as rightfully representing the foreign state. *See Republic of Panama v. Air Panama Internacional*, S.A., 745 F. Supp. 669, 672-76 (S.D. Fla. 1988). This is because it has "long been established that only governments recognized by the United States and at peace with us are entitled to access to our courts, and that it is

within the exclusive power of the Executive Branch to determine which nations are entitled to sue." *Pfizer v. Gov't of India*, 434 U.S. 308, 319-20 (1978).

Here, the Executive Department has spoken with unmistakable clarity concerning the 2015 National Assembly being the only legitimate government of Venezuela. *See* Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela (Jan. 23, 2019) ("We continue to hold the illegitimate Maduro regime directly responsible for any threats it may pose to the safety of the Venezuelan people."); U.S. State Department, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023) ("The United States continues to recognize the democratically elected 2015 National Assembly as the last remaining democratic institution in Venezuela, and we welcome the agreement reached to extend its authority."). The President further denounced the Maduro regime and made clear that the Maduro regime should have no access to the Republic's assets located in the United States. *See*, *e.g.*, Fact Sheet, *President Donald J. Trump is Cutting Off Financial Resources to Maduro and His Cronies* (Aug. 6, 2019).[3] As President Trump stated, "[t]his action is not against the Venezuelan people, but against Maduro and his ongoing human rights abuses." *Id*.

The United States continues to recognize the legitimacy of the National Assembly of 2015, as well as the Commissioner appointed by the National Assembly as Venezuela's diplomatic representative. The U.S. State Department has forwarded notifications issued by this and other U.S. courts to the Commissioner as part of this recognition.

---

[3] Available at: https://trumpwhitehouse.archives.gov/briefings-statements/president-donald-j-trump-cutting-off-financial-resources-maduro-cronies/

- 6 -

Mr. Risenberg relies upon recent interactions between the United States and the Maduro regime concerning issues such as the agreement to accept the return of Venezuelan citizens to their home nation. ECF No. 29-1 at 6 & n.6. Citing an affidavit filed in unrelated litigation in the District,[4] Mr. Risenberg argues that a "continuous series of productive negotiations between relevant Venezuelan and U.S. officials regarding U.S. foreign-policy objectives" require the Court to "support the policy of the executive branch whenever such policy is discernible." ECF No. 29-1 at 6.

But this analysis invites the very judicial intrusion that courts have expressly prohibited, given that recognition of foreign governments "so strongly defies judicial treatment." *Baker v. Carr*, 369 U.S. 186, 212 (1962) ("recognition of foreign governments so strongly defies judicial treatment that without executive recognition a foreign state has been called a republic of whose existence we know nothing"). It is not the role of federal courts to read tea leaves to decide if the Executive Branch has recognized a government through some identified action, particularly where the Executive Branch has spoken clearly and unequivocally in recognizing a particular government as has happened here. *See Republic of Panama v. Rep. Nat. Bank of N.Y.*, 681 F. Supp. 1066, 1071 (S.D.N.Y. 1988) ("[I]t is not a proper function of a domestic court of the United States to attempt to judge which government best represents the interests" of a foreign nation). Nothing in the materials

---

[4] Mr. Risenberg attaches the Declaration of Michael G. Kozak (Mar. 15, 2025), which was filed by the United States in support of an emergency motion in *J.G.G. v. Trump*, Case 25-5067 (D.C. Cir.), involving a suit by five Venezuelan men threatened with imminent removal from the United States. The affidavit does not assert any recognition of the Maduro regime and acknowledges that the Maduro regime is not recognized as a legitimate government. *See* ECF 32-20 at ¶ 2 (distinguishing between discussions with "the Government of El Salvador" and "Nicholas Maduro and his representatives in Venezuela.").

presented by Mr. Risenberg in any way implies recognition of the legitimacy, much less the legality, of Maduro's regime.

Mr. Risenberg's analysis does more than simply overlooking the Executive Branch's plain and unambiguous recognition of the National Assembly of 2015 (and repudiation of the Maduro regime). The analysis also ignores the numerous ways that the Executive Branch continues to treat the Maduro regime as an illegitimate and rogue regime, such as:

- The State Department offering a reward of up to $25 million for assistance leading to the arrest of Maduro.[5]

- The Justice Department's open federal criminal indictment against Maduro, charging him for narco-terrorism, conspiracy to import cocaine, possession of machine guns and destructive devices, and conspiracy to possess machine guns and destructive devices.[6]

- The Treasury Department's on-going sanctions against Maduro and other senior executives for their "repression of the Venezuelan people and denial of their citizens' rights to a free and fair election." More than 100 officials and institutions representing the Venezuelan state under the Maduro regime have been sanctioned by the Treasury Department.[7]

---

[5] https://www.state.gov/nicolas-maduro-moros/
[6] https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-announces-narco-terrorism-charges-against-nicolas-maduro-current
[7] *See*, *e.g.*, https://home.treasury.gov/news/press-releases/sm0137

- President Trump's February 2025 announcement that he would rescind the license that had allowed Chevron, a major U.S. oil company, to operate in Venezuela.[8]

Even the heads of the Venezuelan Public Ministry (Fiscal General de la República Tarek William Saab) and the Venezuelan Attorney General's Office (Procurador General Reinaldo Enrique Muñoz Pedroza) have been sanctioned by the U.S. Treasury for their roles in undermining democracy and human rights in Venezuela and for their close collaboration with and support of the illegitimate Maduro regime.[9]

Nothing in Mr. Risenberg's arguments suggest any reason for the Court to disregard the plain pronouncement of the Executive Branch—confirmed by all courts that have reviewed the issue—that the United States considers the National Assembly of 2015 as the only legitimate and recognized government of Venezuela.

Finally, Mr. Risenberg argues that even severance of diplomatic relations with a specific foreign government or other political animosity does not preclude the same foreign government from "resorting to United States courts." ECF No. 29-1 at 7. But this statement is not accurate in the current context. A state derecognizes a governmental regime when it recognizes another regime as the legitimate government of that state. *National Petrochemical Co.*, 860 F.2d at 553. A regime not recognized as state's government is ordinarily denied access to the U.S. courts. *See Guaranty Trust Co. v. United States*, 304 U.S. 126, 137 (1938); *PDVSA United States Litig. Tr. v. Lukoil Pan Ams. LLC*, 65 F.4th 556, 562-63

---

[8] https://www.bloomberg.com/news/articles/2025-02-26/trump-revoking-venezuela-oil-license-in-blow-to-maduro-regime

[9] https://home.treasury.gov/news/press-releases/sm0132; https://home.treasury.gov/news/press-releases/sm1115

(11th Cir. 2023) (Maduro regime not authorized to litigate on behalf of Petróleos de Venezuela as "No Guaidó-appointed officials have authorized this suit or the Maduro entity's motion to substitute, nor has any entity they control opted to bring suit itself."). Nothing in the arguments presented by Mr. Risenberg contradicts the fact that the Maduro regime may not legitimately litigate on behalf of the Republic in United States courts.

For all of these reasons, the political question doctrine precludes the relief sought by Mr. Risenberg's papers on behalf of the OAG in Caracas.

### B. The Act of State Doctrine Prohibits Examination of the Republic's Decision to Retain Specific Legal Counsel.

The act of state doctrine also precludes the Court from reviewing the decision concerning legal counsel made by the National Assembly of 2015, as the "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). Such acts are presumptively valid in U.S. courts. *See W. S. Kirkpatrick & co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990) ("The act of state doctrine . . . requires that, in the process of deciding [a case], the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.").

The legitimacy of the National Assembly of 2015, as recognized by the United States, confers presumptive validity to the acts of this government for acts that occur within Venezuela, including commercial acts. The National Assembly established and empowered CAPA as the body empowered to defend Venezuelan assets abroad and to appoint attorneys in Article 9 of the "Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of Venezuela," whose latest reform, which

governs until 2025, is published in Legislative Gazette No. 82 of December 16, 2024. The National Assembly through CAPA made this selection of Mr. Paw and Freeh Sporkin & Sullivan LLP as its legal counsel for this litigation.

The Executive Branch's recognition of the National Assembly of 2015 standing alone establishes statehood sufficient to invoke the act of state doctrine for the selection of counsel in this litigation. *Jiménez,* 250 A.3d at 838. In fact, the act of state doctrine "even extends to decrees by recognized governments in exile that control no territory." *Id*. at 839; *State of the Netherlands v. Fed. Reserve Bank*, 201 F.2d 455, 456, 462–63 (2d Cir. 1953) (upholding ownership rights of the Netherlands' government-in-exile based on a royal decree, when at the time of the decree, the Netherlands' government had fled to England, where it was recognized by the United States, and did not control any territory in the Netherlands).

For these reasons, the act of state doctrine precludes any review or second guessing concerning the selection of legal counsel in this matter made by the National Assembly of 2015.

### III. Conclusion

For the reasons stated, the Court should deny the motion purportedly filed on behalf of the Republic to substitute the real party in interest and substitution of counsel to Mr. David P. Riesenberg. Because the Court could not grant the relief sought here without addressing non-justiciable political questions, both the political question and act of state doctrines prohibit the substitution that Mr. Riesenberg has requested in his motion.

For the following reasons, the substitution motion should be denied in its entirety.

Dated:  June 13, 2025                             Respectfully Submitted,

FREEH SPORKIN & SULLIVAN LLP


By: /s/ Gregory A. Paw
Gregory A. Paw
Bar Number 421897
2550 M Street NW, First Floor
Washington, DC  20037
267-421-7033
paw@fsslaw.com

COUNSEL FOR DEFENDANT THE
BOLIVARIAN REPUBLIC OF VENEZUELA

- 13 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this motion and accompanying memorandum of points and authorities has been served this <u>   13th   </u> day of June, 2025, upon all counsel of record using the Court's CM/ECF system.

                                                                                                                                 By:  <u>/s/ Gregory A. Paw                    </u>
                                                                                                                                     Gregory A. Paw